NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0535n.06

No. 12-1642

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 31, 2013
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DARYL L. FOSTER,

    Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

                                /

BEFORE:    MERRITT, CLAY, and DONALD, Circuit Judges.

**CLAY, Circuit Judge.**  Pursuant to a plea agreement, Defendant pleaded guilty to conspiracy to possess a document-making implement in violation of 18 U.S.C. § 1028(a)(5) and (f). At sentencing, he asked the court to impose sentences that would run concurrently with state terms of imprisonment, under the provisions of U.S.S.G. § 5G1.3(b). For the following reasons, we **VACATE** the judgment of the district court and **REMAND** the case for resentencing in accordance with this opinion.

## BACKGROUND

### A.    Factual Background

Defendant, along with his associate Torence Hicks, stole credit cards from cars, then made fake identity cards that matched the names on the stolen cards, so that they could buy things with the stolen credit cards. In 2009, Defendant and Hicks, among other crimes, illegally purchased

$6,006.51 worth of jewelry in Brentwood, Tennessee, and committed various other similar crimes in Hendersonville, Tennessee. Defendant had also already been arrested while breaking into a vehicle in Romeoville, Illinois, in 2008. As a result of these crimes and arrests, Defendant pleaded guilty to crimes in Tennessee, where he was sentenced to two separate prison terms of six years each, to run concurrently, and to two charges of burglary in Illinois, for which he received two sentences of three years' imprisonment, also to run concurrently. While in custody, serving those prison sentences, Defendant was indicted in the Eastern District of Michigan for the charges that would lead to the instant appeal.

### B.     Procedural History

A federal grand jury indicted Defendant on September 21, 2011. The indictment charged Defendant with three counts: conspiracy to possess a document-making implement, 18 U.S.C. § 1028(a)(5) and (f); conspiracy to produce false identification documents, 18 U.S.C. § 11028(a)(1) and (f); and conspiracy to use unauthorized access devices, 18 U.S.C. § 1029(a)(2) and (b)(2). Defendant entered into a Rule 11(c)(1)(C) plea agreement with the government in January 2012. Under the terms of that agreement, he pleaded guilty to count one of the indictment, conspiracy to possess a document-making implement, and the government agreed to stipulate that the applicable sentencing range under the United States Sentencing Guidelines was 30–37 months imprisonment. Defendant also reserved the right to argue that pursuant to U.S.S.G. § 5G1.3(b), the federal sentence should be served concurrently with the state court sentences that Defendant was serving while being prosecuted by the federal government.

The plea agreement stipulated both that the guideline range was 30–37 months, and that there were no outstanding disagreements between the parties regarding the guidelines. The plea agreement also contained a provision stating that "[n]either party may take a position concerning the applicable guidelines that is different than any position of that part as reflected in the attached worksheets . . . ." (R. 21, Plea Agreement, Jan. 10, 2012, at 4.) It further stated that under Federal Rule of Criminal Procedure 11(c)(1)(C), the term of imprisonment could not exceed the upper limit of the guidelines range, in this case 37 months. (*Id.* at 5.) It also defined "relevant conduct" for the purpose of sentencing as the two other counts in the indictment. (*Id.* at 4.) Both parties were permitted to withdraw from the plea; the government, if the court found a sentencing range different from the 30–37 months specified in the agreement; and Defendant, if the court sentenced him to a term of imprisonment greater than 37 months. (*Id.* at 6.) Defendant also waived his right to appeal, except he reserved "the right to appeal an adverse ruling as to the applicability of U.S.S.G. §5G1.3(b)," or any restitution order greater than $70,000.00. (*Id.* at 6–7.)

Sentencing was initially scheduled for April 17, 2012. At that hearing, Defendant argued that U.S.S.G. § 5G1.3 applied, and that he was thus entitled to credit for the time he had already served in state prison as well as a concurrent sentence. The district court requested supplemental briefing on the question of whether the state convictions were based on relevant conduct as opposed to merely similar conduct. If it were the former, then Defendant was entitled to a concurrent sentence because § 5G1.3(b) would apply. After supplemental briefing, the government acknowledged that Defendant could be sentenced under that provision, but only if the court used a higher base offense level in calculating the sentence. The district court declined to do so, and

enforced the plea bargain as originally agreed upon. Defendant appeals the sentence, arguing that the government's position during the supplemental briefing was a breach of the plea bargain agreement, and that as a non-breaching party, he was entitled to accept the government's position regarding losses, which would have enabled him to take advantage of U.S.S.G. § 5G1.3(b).

In its supplemental briefing, the government took the position that the offense level proposed in its plea agreement was based on $67,535.23 in losses, of which about $6,000.00 was attributed to the Brentwood, Tennessee conviction. However, it additionally claimed that were it to include the Romeoville, Illinois and Hendersonville, Tennessee charges, there was an extra $14,495.53 in losses, which would put Defendant above the $80,000.00 mark used in U.S.S.G. § 2B1.1(b)(1), which would raise his offense level to 15, with a sentencing range of 37–46 months.

While this calculation resulted in a higher offense level for Defendant, it actually put him in an advantageous position. Under the sentencing guidelines:

> If subsection (a)[1] does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:
> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

---

[1]Subsection (a) concerns crimes committed while a defendant is imprisoned, and is not relevant to this appeal.

U.S.S.G. § 5G1.3(b). In this case, the distinction between relevant and similar conduct is important. If the offenses for which Defendant is currently imprisoned were relevant, and they led to an increase in his offense level for the federal conviction, then Defendant would be entitled to credit for time served and a concurrent sentence would be required unless some other provision also applied. But if the offenses were merely similar, or did not result in an increase in his sentence, then the district court would have discretion as to whether the term of imprisonment was to run consecutively or concurrently. Using the calculations as they were made in the plea agreement, Defendant's offense level had not increased as a result of the state prison terms. But if those amounts were included, as they were in the government's supplemental briefing, then the district court should have applied the provision and sentenced Defendant to a concurrent term.

Defendant decided to adopt the government's new position, and accept the new sentencing guidelines, because they would allow him to take advantage of § 5G1.3(b), and the government agreed that the earlier offenses constituted relevant conduct. The district court did not accept this new position; it found that it was bound by the plea agreement, and the plea agreement required the parties to use the guidelines range as calculated in the original worksheets. The district court sentenced Defendant to a term of 36 months imprisonment to run consecutively with any existing prison terms. Defendant now appeals, claiming that he was entitled to be sentenced according to the government's alternative position.

## DISCUSSION

### A.  Standard of Review

Sentences are reviewed for procedural and substantive reasonableness under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).  The district court's conclusions of law are reviewed *de novo*, while its findings of fact are reviewed for clear error.  *United States v. Moon*, 513 F.3d 527, 539–40 (6th Cir. 2008); *United States v. Hunt*, 487 F.3d 347, 350 (6th Cir. 2007).

### B.  Analysis

Under the Federal Rules of Criminal Procedure:

> [T]he plea agreement may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

Fed. R. Crim. P. 11(c)(1)(C).  Based on this rule, the district court found that it was required to sentence Defendant according to the plea agreement, and therefore did not accept the government's offer of a new position that would have allowed Defendant to take advantage of the rule in U.S.S.G. § 5G1.3(b).  While the district court's reading of Rule 11 is generally sound, this case presents the complication that the government effectively breached its obligations under the plea agreement. *See, e.g.*, *United States v. Barnes*, 278 F.3d 644, 648–49 (6th Cir. 2002).  Plea bargains are essentially contracts.  *Mabry v. Johnson*, 467 U.S. 504, 508 (1984); *United States v. Robinson*, 924 F.2d 612, 613 (6th Cir. 1991).  When the government submitted its alternative sentencing range calculation in its supplemental briefing before the district court, it breached its agreement not to propose a

sentencing range above that which had been agreed to by the parties. *See Barnes*, 278 F.3d at 648 (government breached its plea agreement by failing to request that the court sentence a defendant at the low end of the guidelines range).

As the Supreme Court has held:

When a defendant agrees to a plea bargain, the Government takes on certain obligations. If those obligations are not met, the defendant is entitled to seek a remedy, which might in some cases be rescission of the agreement, allowing him to take back the consideration he has furnished, i.e., to withdraw his plea.

*Puckett v. United States*, 556 U.S. 129, 137–38 (2009). In this case, however, Defendant does not wish to withdraw his plea; instead, he would prefer that the court treat the government's position in its supplemental brief as a new offer, which he then accepted.

In an ordinary contract situation, an aggrieved party may be entitled to a benefit derived from another party's breach; if the aggrieved party would still like the contract to go forward despite the breach, it can do so and the court will still enforce what remains of the contract. 23 R. Lord, Williston on Contracts § 63.9 (4th ed. 2012). However, we can find no cases where this rule has been applied to plea bargains. In the event of a breach of a plea bargain by the government, the two remedies that courts can ordinarily apply are either rescission or specific performance. In other words, a defendant can be given the chance to withdraw his plea, and in some circumstances, a court may instead enforce the original plea as it was negotiated between the parties. *Puckett*, 556 U.S. at 137–38 ("But rescission is not the only possible remedy; in *Santobello* [*v. New York*, 404 U.S. 257, 263 (1971),] we allowed for a resentencing at which the Government would fully comply with the agreement—in effect, specific performance of the contract."); *United States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993) ("When the prosecution breaches a plea agreement, the breach may be

7

remedied by either specific performance of the agreement or by allowing the defendant to withdraw the plea.") (internal quotation marks and citations omitted). But there is no authority for the proposition that when a government breach is inadvertently advantageous to the defendant the court must use that advantageous position resulting from the breach.

Furthermore, there is no authority that requires or permits a court to revise the terms of a plea agreement under these circumstances. Once the parties have entered a plea pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the court can only accept or reject the plea; it has no inherent authority to modify the agreement. As this Court has held:

> Once a district court accepts a Fed.R.Crim.P. 11(c)(1)(C) plea agreement, it is bound by the bargain. *United States v. Mandell*, 905 F.2d 970, 972 (6th Cir. 1990) (citing *United States v. Holman*, 728 F.2d 809, 813 (6th Cir. 1984)). "The district court is not authorized to go beyond the confines of Rule 11 in accepting or rejecting plea agreements." *United States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993) (citing *United States v. Partida-Parra*, 859 F.2d 629, 632 (9th Cir.1988)). "Nothing in the rules even remotely allows the district court to accept a guilty plea but rewrite the plea agreement, even if the modified agreement is more favorable to the defendant." *Id.* (citing *United States v. Olesen*, 920 F.2d 538, 540 (8th Cir. 1990)). Furthermore, this Court has yet to adopt the position that a district court may modify or reform a Rule 11(c)(1)(C) sentence on the basis of a mutual mistake of fact. *See United States v. Peveler*, 359 F.3d 369, 378 n. 4 (6th Cir. 2004).

*United States v. Hodge*, 306 F. App'x 910, 914 (6th Cir. 2009). So while plea bargains are essentially contracts, many of the remedies that would ordinarily be available in a commercial contract dispute do not apply in the context of a plea bargain. Instead, the court is limited to either enforcing the Rule 11 plea, or offering the defendant a chance to rescind the agreement.

In this case, the district court granted Defendant specific performance of a plea bargain that he no longer wanted to accept. While Defendant reiterated his desire to accept the plea at the sentencing hearing on May 8, 2012, after supplemental briefing had been submitted, he did so before

the court announced that it would not use the government's new position on the appropriate guidelines range. In other words, it is plausible to assume that Defendant's plea was induced by his belief that the district court would accept the government's new position on the appropriate range. *See Williams v. United States*, 47 F. App'x 363, 369 (6th Cir. 2002) ("Under the principle of '[f]undamental fairness, . . . courts will enforce promises made during the plea bargaining process that induce a criminal defendant to waive his constitutional rights and plead guilty.'") (quoting *Robison*, 924 F.2d at 613). And when the government has breached its agreement with Defendant, a court can order specific performance of the plea agreement. *Id.* at 369.

But specific performance is an extraordinary equitable remedy, 81A Corpus Juris Secundum § 2, and is typically only appropriate if the aggrieved party still wishes to go ahead with the original contract. *Cf. King v. Hamilton*, 29 U.S. 311, 327 (1830) ("A party, to entitle himself to the aid of a court of chancery for a specific execution of a contract, should show himself ready and desirous to perform his part.") Because the district court did not properly consider its remedial options, or adequately explain why it chose to enforce an agreement that the parties had both disavowed, the case will be remanded for reconsideration. Defendant is still entitled to the two options of specific performance or rescission of the plea, but he must be permitted to meaningfully exercise his option to rescind.

Finally, there is a question about the extent to which the district court's decision, even while it purported to apply the terms of the original plea bargain, actually did so. The initial plea agreement clearly contemplated the possibility of the application of U.S.S.G. § 5G1.3(b) (as well as the possibility that it would not apply). Accordingly, enforcing the Rule 11 plea bargain might

have permitted the district court to use the newer guidelines calculation and apply the U.S.S.G. § 5G1.3(b) provision, a possibility that the district court appears to have felt was foreclosed by Rule 11. Therefore, the district court erred insofar as it believed it was bound by the Rule 11 agreement not to apply the provision, rather than recognizing that it had discretion to apply § 5G1.3(b).

## CONCLUSION

For the foregoing reasons, we **VACATE** the district court's sentence, and **REMAND** with instructions to the district court to re-sentence Defendant, who shall be afforded an opportunity to withdraw his plea bargain based on the government's breach. We further instruct the district court to reconsider its decision not to apply U.S.S.G. § 5G1.3(b) based on the language of the plea bargain. We note that if Defendant does withdraw his plea, he and the government are free to renegotiate a new plea arrangement, subject, as always, to the district court's acceptance of the plea.